Gene WASHINGTON, Diron Talbert, and Sean Lumpkin, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE, NFL Ventures, L.P., NFL Productions, LLC, NFL Enterprises, LLC, Arizona Cardinals, Inc., Atlanta Falcons Football Club LLC, Baltimore Ravens LP, Buffalo Bills, Inc., Panthers Football LLC, Chicago Bears Football Club, Inc., Cincinnati Bengals, Inc., Cleveland Browns LLC, Dallas Cowboys Football Club, Ltd., Denver Broncos Football Club, Detroit Lions, Inc., Green Bay Packers, Inc., Houston NFL Holdings LP, Indianapolis Colts, Inc., Jacksonville Jaguars Ltd., Kansas City Chiefs Football Club, Inc., Miami Dolphins, Ltd., Minnesota Vikings Football Club LLC, New England Patriots, LP, New Orleans Louisiana Saints, LLC, New York Football Giants, Inc., New York Jets Football Club, Inc., Oakland Raiders LP, Philadelphia Eagles Football Club, Inc., Pittsburgh Steelers Sports, Inc., San Diego Chargers Football Co., San Francisco Forty Niners Ltd., Football Northwest LLC, The Rams Football Co. LLC, Buccaneers LP, Tennessee Football, Inc., and Washington Football Inc., Defendants.

Civil No. 11–3354 (PAM/AJB).

United States District Court,
D. Minnesota.

June 13, 2012.

Brian C. Gudmundson, Charles S. Zimmerman, J. Gordon Rudd, Jr., Zimmerman Reed, PLLP, Daniel E. Gustafson, Gustafson Gluek PLLC, Mark J. Feinberg, Shawn D. Stuckey, Zelle Hofmann Voelbel & Mason LLP, Minneapolis, MN, Robert A. Stein, Bob Stein LLC, Minnetonka, MN, Shawn M. Raiter, Larson King, LLP, St. Paul, MN, James J. Pizzirusso, Michael D. Hausfeld, Hausfeld LLP, Washington, DC, Michael P. Lehmann, Hausfeld LLP, San Francisco, CA, for Plaintiffs.

Aaron D. Van Oort, Daniel J. Connolly, Faegre Baker Daniels LLP, Minneapolis, MN, Derek Ludwin, Gregg H. Levy, Covington & Burling LLP, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

PAUL A. MAGNUSON, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons that follow, the Motion is granted.

## BACKGROUND

This case is very similar to the *Dryer* case currently pending before this Court, *Dryer v. Nat'l Football League*, 09cv2182 (D. Minn. filed Aug. 20, 2009). As in *Dryer*, Plaintiffs are former professional football players who seek to represent a class of similarly situated individuals. Here, they contend that Defendants are violating the antitrust laws by allegedly constraining the sale of their images and likenesses. Defendants are the National Football League ("NFL"), NFL Ventures, L.P., NFL Productions, LLC, NFL Enterprises, LLC, and each of the 32 NFL teams.

The allegations in *Dryer* are that the players have common-law and statutory rights of publicity in their own images. The *Dryer* plaintiffs want the NFL to pay for the use of video footage featuring their images in NFL Films' promotional videos. Here, the former players contend that by not allowing them the rights to game films and images from the games in which they played, Defendants are monopolizing the market for former players' likenesses, in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*

## DISCUSSION

■ For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. *See Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### A. *American Needle, Inc. v. NFL,* 130 S.Ct. 2201 (2010)

Plaintiffs rely heavily, almost exclusively, on this recent Supreme Court decision. Indeed, Plaintiffs go so far as to claim that the reason these antitrust allegations were not included in the *Dryer* matter is because the Supreme Court ruling in *American Needle* came out after the deadline to amend pleadings in *Dryer,* and that before *American Needle* Plaintiffs could not have pursued antitrust claims such as those here.

*American Needle* involved allegations by a former licensee of NFL team merchandise that the NFL and its member teams conspired to illegally restrain trade by agreeing that NFL Properties could license all NFL-related merchandise, including individual team logos and so forth, to a single entity. The lower courts found that the NFL could not conspire with itself. *Am. Needle, Inc. v. New Orleans La. Saints,* 496 F.Supp.2d 941, 943 (N.D.Ill. 2007); *Am. Needle, Inc. v. Nat'l Football League,* 538 F.3d 736, 744 (7th Cir.2008). The Supreme Court disagreed, finding that actions by the NFL and its teams could constitute concerted action in violation of the Sherman Act. *Am. Needle, Inc. v. Nat'l Football League,* — U.S. —, 130 S.Ct. 2201, 2216, 176 L.Ed.2d 947 (2010).

But other than the holding that the NFL and its teams might, in some instances, be capable of concerted action in violation of the Sherman Act, *American Needle* does not support Plaintiffs' contentions here in the least. First, *American Needle* involved intellectual property that each team owned separately from the NFL: team logos, team colors, and the like. As the Court stated, NFL Properties' "licens-ing decisions are made by the 32 potential competitors, and each of them actually owns its share of the jointly managed assets." 130 S.Ct. at 2214. Thus, "at least with regards to its marketing of property owned by the separate teams," the NFL's actions could be subject to the Sherman Act. *Id.; see also id.* at 2215 ("decisions by the NFLP regarding the teams' separately owned intellectual property constitute concerted action.").

■ Here, unlike in *American Needle,* the intellectual property involved is historical football game footage, something that the individual teams do not separately own, and never have separately owned. Rather, the NFL owns the game footage, either alone or in conjunction with the teams involved in the game being filmed. These entities must cooperate to produce and sell these images; no one entity can do it alone. *See id.* at 2216 (noting that the NFL teams "must cooperate in the production and scheduling of games, [which] provides a perfectly sensible justification for making a host of collective decisions."). Indeed, the Supreme Court recognized as much, stating that its decision was only that teams in the NFL could not be treated as a single entity under the Sherman Act "when it comes to the marketing of the teams' individually owned intellectual property." *Id.* at 2217. Thus, Plaintiffs' assertion at the hearing that the Supreme Court has determined that the NFL and its teams can "act in concert for the purpose of marketing their collective intellectual property" (Tr. at 9) is fundamentally incorrect. The NFL and its teams can conspire to market each teams' individually owned property, but not property the teams and the NFL can only collectively own. Thus, Plaintiffs have in the first instance failed to establish any concerted action that is illegal under the Sherman Act.

Moreover, in some situations a "restraint[ ] on competition [is] essential if the product is to be available at all." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Oklahoma,* 468 U.S. 85, 101, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984). Plaintiffs do not explain what market might exist in game footage that features only that footage to which any player can claim to be individually entitled: a single player's image without any NFL logos or marks. The market is for game footage featuring many players, wearing NFL logos and treading fields replete with NFL marks. Plaintiffs cannot and do not contend that they own or should own the footage itself. Thus, the Rule of Reason compels the conclusion that, even if there is concerted action to restrain trade in Plaintiffs' images, that agreement "is necessary to market the product at all" and is therefore not illegal. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.,* 441 U.S. 1, 23, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

## B. Sherman Act

Even more basically, however, the Complaint does not state a claim for a violation of the Sherman Act. The Sherman Act provides in relevant part that "[e]very contract, combination . . ., or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. Similarly, the Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any party of the trade or commerce among the several States. . . ." *Id.* § 2. A violation of § 1 or § 2 is a felony punishable by a fine of up to $100 million and imprisonment up to 10 years. And, of course, a person bringing a civil antitrust action is eligible for treble damages.

Plaintiffs attempt to explain their claims by asserting that the relevant market is the market of "footage of NFL games and players" (Compl. ¶ 20), and the consumers in that market are the NFL and, perhaps, television networks. (Pls.' Opp'n Mem. at 11, 17.) But Plaintiffs do not explain how the NFL can be both a consumer and a trade-restrainer at the same time. Moreover, the alleged "restraints" about which Plaintiffs complain arise because the NFL owns a copyright in the game footage. A copyright is nothing more than legal authorization to restrain trade in that intellectual property. *See Chess Music, Inc. v. Sipe,* 442 F.Supp. 1184, 1185 (D.Minn.1977) (Larson, J.) ("The purpose of the Copyright Act is to protect the interests [of copyright holders] by granting legal monopolies to them in the publication and performance of copyrighted works.") (citations omitted).

Plaintiffs also contend that, because the game footage involved here is owned collectively, the antitrust laws somehow prescribe how the collective can market and sell the intellectual property it owns. But this is precisely what the antitrust laws do not prohibit. And Plaintiffs' assertion at the hearing that a copyright holder does not have the right to exclude the "right of someone else within the technology" to sell their own likeness that is contained in that technology (Tr. at 12) is nonsensical to say the least. If this statement were true, then an actor in a film could sell his or her image from the film for his or her own purposes; so, for example, Tom Cruise could sell the portions of the "Mission: Impossible" franchise that feature him and Paramount Pictures could not restrain him from doing so. The mere fact that the copyright in the "Mission: Impossible" franchise is owned by a single entity and the copyright in historical NFL game footage is owned collectively is simply irrelevant to the rights conferred by the copyright.

If the NFL is refusing to pay Plaintiffs for the use of their images in its copyrighted material, then Plaintiffs may have a claim for a violation of their right of publicity (as in the *Dryer* case). But this is a royalties issue, not an antitrust issue. Plaintiffs have utterly failed to make out a claim for violation of the antitrust laws, and no amount of legal tongue-twisting will turn their claims into antitrust claims. What they have are claims for royalties, not claims for antitrust. The Complaint is therefore dismissed with prejudice.

### CONCLUSION

Plaintiffs have failed to plausibly allege any antitrust violation from Defendants' conduct. Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Docket No. 13) is **GRANTED** and the Complaint is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**